[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on July 29, 1983 at Tiburon, CT Page 5730 California. They have resided continuously in this State since 1986. There is one minor child issue of the marriage, Lindsay Crolius, born May 22, 1986.
The evidence presented at trial has clearly established the fact that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-56, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
The plaintiff husband is 39 years of age and in good health. A college graduate, he has been employed by the Times Mirror Corporation. Doing advertising for Ski Magazine for the past 14 years. The plaintiff was transferred from the New York City office to Vermont in December 1992.
The defendant wife is 37 years of age. The defendant did not appear for trial and did not testify. Her guardian ad litem, Richard Stansbury, the defendant's father was present and testified as to his daughter's condition.
The parties married in July 1983. Shortly after the birth of their minor child on May 22 1984 the plaintiff observed a definite change in the defendant. The plaintiff testified as to the defendant's strange and bizarre activity with respect to her clothing, conduct and other matters.
The defendant's condition continued to deteriorate in the following years. In November 1990, Dr. Tec diagnosed the defendant schizophrenic. The plaintiff was unsuccessful in having the defendant obtain the necessary and appropriate treatment.
Dr. Stephen Herman evaluated the defendant in October and November of 1992. His diagnostic considerations included schizophrenia, paranoid type, psychotic depression, psychosis secondary to drug use and some neurodegenerative process. Dr. Herman indicated she had probably smoked a great deal of marijuana.
The parties separated in 1992 and in December 1992 the CT Page 5731 defendant returned to California to her parents home. The plaintiff, having been transferred by his company from New York to Vermont went to Vermont with the minor child where he and the minor child continue to live.
The defendant was in-patient at the Langley Porter Psychiatric Institute for approximately 6 weeks in June 1993 with a diagnosis of atypical psychosis. She is apparently not receiving any medication for her psychiatric condition.
On November 1993 the defendant moved to her brother's home where she presently resides. The defendant does housekeeping for her brother and helps out at the tennis club where her brother is' the Club Tennis Pro. The defendant has maintained her ability to play tennis and her illness has not affected her game. The guardian ad litem testified the defendant continues to be a good tennis player, playing in matches arranged by her brother and playing doubles with seniors several times a week.
The guardian ad litem testified that the defendant has improved since her return to California, and has worked for a short time as a Volunteer. The defendant continues to reside with her brother in California and according to the guardian ad litem, she is unable to live independently at the present time.
The last medical report is dated July 16, 1993 and consists of the Langley Porter Psychiatric Discharge Summary. (Plaintiff's Exhibit 4). The defendant apparently is not on any regime of treatment or medication at this time. There is no current up to date medical report of the plaintiff's condition after July 16, 1993.
The defendant has not seen the minor child since December 1992. The plaintiff claims attempts to have the child talk to her mother in California have been rebuffed by the defendant's parents. Christmas gifts sent to the defendant in California have been returned.
The defendant's father has not visited with the minor child since sometime in 1991. As a retired air line pilot both he and his wife have access to free air travel.
The financial needs of the defendant are small at the present time. She pays her brother $200 month rent and does housekeeping for him in addition to helping him out at the tennis club. CT Page 5732
It was recommended by Langley Porter Psychiatric that the defendant continue with psychiatric care and psychotherapy. The defendant estimates this expense alone to be $550. per month.
The defendant's Financial Affidavit reflects projected expenses that the defendant would incur if she were living alone in her own apartment or home. The figures are based on estimates for the future and in fact the defendant is not paying many of the expenses as shown on her affidavit as they are not her real expenses at this time.
The plaintiff has a base salary of approximately $52,488 per year. According to his Financial Affidavit, he nets $2904.67 per month which includes a deduction of $175. per month for his pension. In addition to his base salary, the plaintiff receives a bonus, although the bonus is not guaranteed.
In 1993, the plaintiff received a net bonus of $18,000.
In 1994, the plaintiff received a net bonus of $9700. In the two years prior to 1992 the plaintiff averaged $12,000. in bonuses. The plaintiff sells advertising for Skiing Magazine and his bonuses are based on the previous seasons sales. The defendant received no portion of the $18,000. bonus. The $9700 bonus is being held in escrow by plaintiff's counsel. The plaintiff has no guarantee of a bonus every year.
In 1991, the plaintiff had an adjusted gross income of $47,909. In 1993, the plaintiff's adjusted gross income was $84,307. However, this figure included the substantial gross bonus of $28,000 plus an additional $8100. which the plaintiff received as a relocation allowance from his employer in connection with his transfer to Vermont.
The marital home located in Milford, Connecticut has an estimated fair market value of $130,000 subject to a mortgage in the amount of $96,000. This property is presently rented and the lease will terminate in August 1994. The property was refinanced in the spring of 1992. The $7700 net proceeds received from the refinancing were applied toward the defendant's motor vehicle accident.
The parties apparently had a happy marriage during the first few years. However, with the birth of their child in 1986, the CT Page 5733 defendant's mental condition gradually deteriorated over a slow period of time.
The Court declines to assess fault to either party for the breakdown of the marital relationship.
The Court has carefully considered the statutory criteria in reaching the decisions reflected in the orders that follow. The Court has also considered that the plaintiff has the full obligation for the minor child. The Court is attempting to leave the plaintiff with sufficient funds to maintain himself and his child and also to provide for the defendant who has no income at this time and is unable to be gainfully employed. The defendant continues to remain dependent on her family for moral support and continues to live with her brother in California. Hopefully, the Guardian ad litem will provide guidance to the defendant in the management of her funds, which, unfortunately based on the plaintiff's financial situation and income will be modest.
The following orders shall enter:
A. Custody Visitation
1. Sole custody of the minor child is awarded to the plaintiff.
2. In view of the defendant's present condition, the defendant shall have reasonable and flexible supervised rights of visitation with the minor child. The supervisors shall be the defendant's mother or father when the visitation takes place in California. The plaintiff shall pay for two round trip flights per year to California. The child shall be accompanied by the defendant's mother or father on said flights at their expense, if any.
3. The plaintiff shall send examples of the child's school work and report cards to the defendant, as well as periodic photographs on a regular basis.
4. The defendant shall have regular telephone contact with the minor child on a weekly basis.
5. The issue of supervised visitation shall be modifiable upon the request of either party. This Court shall retain jurisdiction over any disputes with respect to visitation. CT Page 5734
6. The plaintiff shall provide medical coverage for the benefit of the minor child as is available through his employment The, plaintiff shall be responsible for all unreimbursed medical expenses incurred by the minor child.
7. The defendant shall be entitled to reasonable and flexible supervised visitation with the minor child in Vermont, at her expense, on reasonable advance notice to the plaintiff.
B. Child Support
1. No order of child support is entered at this time. This provision shall be modifiable if the present circumstances change.
C. Tax Exemption
1. The plaintiff shall be entitled to claim the minor child as a dependent for Income Tax purposes.
D. Life Insurance
1. The plaintiff has offered to provide a Life Insurance Policy for the benefit of the minor child in the amount of $50,000. (Fifty Thousand) Dollars and it is so ordered. The plaintiff shall maintain said policy naming the child as beneficiary, until the child reaches the age of 18 years.
E. Real Estate
1. The real estate located at 41 Grant Street, Milford, Connecticut shall be listed for sale as soon as possible. After the payment of the real estate commission, mortgage, usual closing costs and attorney's fees, the net proceeds shall be equally divided between the parties.
2. Until such time as the premises are sold, the plaintiff shall be entitled to keep the rents, and he shall be responsible for the mortgage, taxes, insurance and ordinary repairs if necessary.
3. The Court shall retain jurisdiction over any disputes arising out of the sale of this property. CT Page 5735
4. Any major repairs in excess of $750 shall be deducted from the gross proceeds before the net proceeds are divided between the parties.
F. Alimony
1. The defendant is awarded alimony in the amount of $1100 per month commencing May 1, 1994, until her death or remarriage or until she can become gainfully employed or 5 years from this date whichever event first occurs, at which time this court may modify, terminate or continue said alimony based on a second look.
G. Other Property
1. The defendant is awarded the following:
1. one half of the 1993 tax Refund;
 2. one half of the 1993 bonuses currently held in escrow by Plaintiff's counsel;
 3. one half of the present value of the plaintiff's, Times Mirror Pension Plan and the Ziff Corporation pension plan by means of a QDRO.
H. Debts
1. The plaintiff shall pay forthwith the unpaid Pendente Lite award of $2000.
2. The plaintiff shall be responsible for the unreimbursed medical sums due to the Langley Porter Hospital, UCSF, in San Francisco, and he shall make arrangements for the payment of the balance due not to exceed $3720.
3. The Plaintiff shall be responsible for the unreimbursed and uninsured balance due UCSF out Patient in the amount of $706.30.
I. Miscellaneous
1. The defendant is entitled to receive her clothing and personal items as are still remaining in the marital home. CT Page 5736
2. The Plaintiff shall be entitled to the furniture and furnishings as are still remaining in the marital home.
3. The remaining assets on the Plaintiff's financial affidavit and property in the plaintiff, Possession shall remain the property of the plaintiff.
J. Change of Name
1. The defendant is granted a change of name to Judith Stansbury.
K. Counsel Fees
1. Each party shall pay their respective counsel fees.
L. Defendant's Motion to Set Aside Pendente Lite Award
1. Defendant filed a Motion dated February 1, 1994 to set aside the Pendente Lite Award, Real Estate Conveyance and transfer of funds.
The Court finds that the funds received from the refinancing of the marital home were used for the defendant's motor vehicle accident. No substantial evidence was presented to the contrary.
With respect to the Real Estate, the Court has ordered the premises sold and has awarded the defendant 50% of the net proceeds. No useful purpose would be served by ordering a reconveyance back to the defendant at this time.
The plaintiff provided unsigned, unsworn to, draft affidavits after the Stipulation of May 28, 1993 was approved and filed in Court.
The Court file does not indicate any further hearings in which the defendant relied on the plaintiff's draft and unsigned affidavits. The parties did not negotiate a full and final settlement based on the plaintiff's draft affidavits which failed to indicate the rental income he was receiving from the Milford property which assisted the plaintiff in paying the mortgage, taxes, and insurance on the marital home. The marital home has been rented since August 1993.
The court does not condone the plaintiff's failure to file CT Page 5737 complete and accurate financial affidavits even though they were unsigned and unsworn to in draft form.
The defendant's Motion to Set Aside the Pendente Lite Award, Real Estate Conveyance and transfer of funds dated February 1, 1994 is denied.
COPPETO, J.